[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs brought this action against the defendants claiming back rent and/or use and occupancy of the premises located at and known as 794 Orange Street, New Haven, together with an area of 25% of the basement. The premises are owned by the plaintiffs and were previously occupied by the defendants. The plaintiffs also claimed attorney's fees, interest and costs of collection. The defendants' two special defenses claimed an unlawful entry and detainer and the plaintiffs' failure to mitigate their damages. The defendants also filed a counterclaim claiming an unlawful entry and detainer and a violation of the Connecticut Unfair Trade Practices Act.
FACTS
The plaintiffs and defendants entered into a written lease agreement for the subject premises for a period of two years. Exhibit A. The lease was renewed for a period of four more years terminating on July 31, 1993. Exhibit B. The demised premises consisted of 1200-1300 square feet on the first floor and an additional 300-400 square feet in the basement. The access to the basement was gained, through a door separate from the first floor space in the back of the building comprising the demised premises. CT Page 8766 The remaining 75% of the basement was used by the plaintiffs for storage, the location of the gas meter, water meter, furnace for the entire building and a toilet which was used by both the plaintiffs and the defendants.
The defendants used the basement for storage of personal property (two buckets of pennies worth $200.00, four bags of returnable bottles worth $200.00 and a new 15" tire for a truck worth $125.00) and property belonging to a corporation, Willow Farms, Inc., which was owned by the defendants. Both parties had free access to the basement until June 1, 1993, when the plaintiffs changed the locks and denied the defendants access to the basement without the plaintiffs' permission. In order to gain access to the basement the defendants would have been required to cause damage to the premises by having to break down the door to the basement or by committing a breach of peace.
The defendants failed to pay rent and/or use and occupancy for the months of April, May, June and July and the period August 1-15, 1993. The rent and/or use and occupancy for this period was $1397 per month. Exhibit B. The plaintiffs were holding a security deposit in the amount of $800.00, which has never been returned to the defendants.
On July 19, 1993, the plaintiffs obtained a judgement of possession against the defendants with a final stay of execution through August 7, 1993. Exhibit C. The defendants vacated the first floor of the premises on August 15, 1993. The defendants had been locked out of the basement since June 1, 1993. The plaintiffs disposed of the personal property of the defendants located in the basement.
The lease required the defendants to pay the water bill and the sewer bill and a reasonable attorney's fee. Exhibit A. The defendants did not pay the water bill totaling $472.53. Exhibit D. The defendants did not pay the sewer bill totaling $578.46. Exhibit E. The plaintiffs incurred legal fees and costs for the summary process action of $590.35. Exhibit F.
DISCUSSION
The initial issue the court must decide is whether the service of a notice to quit relieves the defendant from the obligation to pay rent and/or use and occupancy. CT Page 8767
 Although the termination of the tenancy (by the service of a notice to quit) releases a tenant from his obligations under the lease, such release does not leave the landlord without legal recourse to recover damages. Where a landlord, as in this case, elects to terminate the tenancy and to regain possession of the premises, although he cannot institute an action for rent due under the lease, he may sue for a breach of the lease. Where the action is one for breach of the lease, basic contract principles apply.
 As the trial court correctly concluded: `A lease is nothing more than a contract. Thus, as in any other contract action the measure of damages is that the award should place the injured party in the same position as he would have been in had the contract been fully performed. As a consequence, the unpaid rent, while not recoverable as such, may be used by the court in computing the losses suffered by the plaintiff by reason of the defendant's breach of contract of lease. The plaintiff would be entitled to recover the damages which would naturally follow from such a breach. We conclude that the trial court correctly determined that, in an action for breach of a lease, the amount of rent agreed to by the parties is a proper measure of damages.
(Internal citations omitted.) Rokalor, Inc. v. Connecticut EatingEnterprises, Inc., 18 Conn. App. 384, 389 (1989). The court finds that the defendants owe the plaintiffs use and occupancy for the period April 1, 1993-August 15, 1993 totaling $6286.50, the water bill totaling $472.53, the sewer bill totaling $578.46, the attorney's fees and costs for the summary process action totaling $590.35. The court finds the testimony of the plaintiff John DiPaola regarding the renting of a dumpster, hiring someone to clean out the premises and the replacement of the basement stairs less than credible. The plaintiffs offered no bills for the dumpster rental nor for any of the work performed by the hired hand nor for the replacement of the basement stairs. Therefore the court does not award the plaintiffs any damages for these items.
The court will next address the issue of attorney's fees for the plaintiffs in this action. The defendants rely on Buccino v.Cable Technology, Inc., 25 Conn. App. 676 (1991) for the proposition that attorney's fees should not be awarded in this case because the plaintiffs' claim is predominantly for use and CT Page 8768 occupancy after the lease was terminated by the plaintiffs. The defendants' reliance is misplaced. In Buccino, "(T)he defendants conceded before trial that they were liable for their use and occupancy of the premises . . . (a)s such, this matter was not truly at issue during the trial." Id., 680. In the present case, the defendants contested the use and occupancy and made it an issue during the trial. Also, the court has awarded damages under the lease, i.e., attorney's fees and costs for the summary process action and the water and sewer bills. The court awards a reasonable attorney's fee in the amount of $1350.00.
The court has found pursuant to the above facts that the plaintiffs locked the defendants out of the basement on June 1, 1993 in violation of C.G.S. § 47a-43. "To prove possession, it was unnecessary for the (defendants) to show a continuous personal presence." Spagnoletti v. Kouromithelakis, Superior Court, Judicial District of Waterbury, No. 099057 (March 4, 1991, Barnett, J.). Therefore, the defendants do not owe use and occupancy for the basement after June 1, 1993. The court finds that the use and occupancy for the basement for the period June 1, 1993-August 15, 1993 was $848.13. The court's award of $6286.50 should be reduced by said $848.13 to $5438.37. The $5438.37 shall also be reduced by the $800.00 security deposit paid by the defendants for a total award in favor of the plaintiffs for rent and/or use and occupancy of $4638.37.
The defendants' other special defense sounded in failure to mitigate damages. Since the defendants did not vacate the premises until August 15, 1993, well after the term of the lease had ended on July 31, 1993, the plaintiffs could not mitigate any damages for they were not in possession of the premises during the term of the lease.
On the defendants' counterclaim, the court has found that the plaintiffs violated C.G.S. § 47a-43. The defendants' damages were the loss of the personal property that was improperly disposed of by the plaintiffs. The value of said personal property was $525.00. Pursuant to C.G.S. § 47a-46, the court, in its discretion, awards double damages to the defendants totaling $1050.00.
The court further finds that the plaintiffs violated C.G.S.42-110a by their violation of C.G.S. § 47a-43. Freeman v. AlamoManagement Co., 24 Conn. App. 124, 130 (1991), rev'd on other grounds, 221 Conn. 674 (1992); Daddona v. Liberty Mobile HomeCT Page 8769Sales, Inc., 209 Conn. 243, 257-258 (1988). Pursuant to C.G.S. § 42-110g(a) and (d), the court, in addition to the damages awarded to the defendants above for the violation of C.G.S. § 47a-43, awards punitive damages in the amount of $1,000.00 and reasonable attorney's fee in the amount of $1,350.00.
CONCLUSION
Judgment shall enter in favor of the plaintiffs on the complaint in the amount of $6,279.71 plus attorney's fee of $1,350.00. Judgment may enter in favor of the defendant on the counterclaim in the amount of $2050.00, plus attorney's fee of $1,350.00.
Mintz, J.